UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRENDA LINDSEY,

    Plaintiff,

v.

THE BOEING COMPANY,

    Defendant.

CASE NO. C08-1324 RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## **I. INTRODUCTION**

This matter comes before the Court on Defendant's Motion for Summary Judgment. (Dkt. #26). Defendant argues that Plaintiff's racial discrimination claims following the termination of Plaintiff's employment with Defendant should be dismissed. Plaintiff, appearing *pro se*, responds that summary judgment is premature because discovery has not yet concluded. Plaintiff also requests appointment of counsel.

For the reasons set forth below, the Court agrees with Defendant, and GRANTS Defendant's motion in its entirety.

## **II. DISCUSSION**

**A. Background**

The instant lawsuit arises out of the Defendant Boeing Company's ("Boeing") decision to terminate Plaintiff Brenda Lindsey's employment on February 27, 2008. Boeing contends

ORDER
PAGE - 1

that Plaintiff, an African-American who was hired as a Project Management Specialist 3 in January of 2005, was fired because she had made several misrepresentations to Boeing about her residence and her time records, and she had also made a threat against her supervisor.

In her capacity as a Project Management Specialist, Boeing indicates that Plaintiff's primary responsibilities included supporting assignments and IT projects for the commercial airline project management department and providing project management to customers. (Dkt. #27, Decl. of Andrews, ¶¶ 3-6). Approximately one year after Plaintiff commenced her employment with Boeing, she requested a "virtual" assignment which would allow her to perform her work at other locations outside of Boeing's primary Renton, Washington worksite. Plaintiff represented to Boeing that she was intending to move from Washington to California. Boeing approved this request, and at some point in the summer of 2006, Plaintiff began her "virtual" assignment.

In September of 2007, Plaintiff also sought to change her work schedule from five eight-hour days to four ten-hour days. It appears that this claim was made in order to accommodate Plaintiff's desire to take Wednesdays off. Boeing granted this request as well.

Despite these approvals, Boeing contends that Plaintiff exhibited significant performance deficiencies during her employment with Boeing. Boeing indicates that Plaintiff had missed more than ten days of work for unexcused absences over a three-month period. Boeing further contends that Plaintiff failed to comply with directions from management, including expressly acknowledging that she had done nothing on certain assigned work projects, and failing to provide an accounting to her IT manager, Dana Andrews. (Decl. of Andrews, ¶ 18). Boeing also indicates that Plaintiff's level of contribution was not meeting expectations. These concerns were raised to Plaintiff in a March 2007 meeting with Plaintiff, Mr. Andrews, and two Human Resources representatives. They were also reflective of an overall pattern in which Plaintiff demonstrated attendance problems, failed to perform her assigned tasks, and refused to take on additional requested assignments. (*Id.*, ¶ 16).

Plaintiff's performance did not improve following this meeting. As a result, Boeing began monitoring Plaintiff's company-issued laptop in December of 2007 to determine the

ORDER
PAGE - 2

number of hours Plaintiff logged into Boeing's network per day. Boeing discovered that Plaintiff's active log-in time was well below the hours she reported she had worked. Boeing's investigation also revealed suspicious information about Plaintiff's whereabouts. It appeared that Plaintiff accessed several websites that revealed she was still living in Seattle, including websites regarding real estate in Seattle, appointments to tour a private children's school in Seattle, e-mail communications regarding tennis lessons at the University of Washington, and notifications from the Seattle Public Library regarding overdue books in her name.

Based on this information, Boeing directed David Johnson, a Boeing Investigator and Manager for the Southwest Region Office of Internal Governance, to conduct a full-scale investigation into the location of Plaintiff's residence. This investigation revealed, among other things, that: (1) the address Plaintiff provided to Boeing as her home address was a UPS mailbox store in San Diego, California; (2) the only address Plaintiff had listed upon a public records search was an apartment in Magnolia, Washington; (3) Plaintiff's only telephone number was her Boeing company-issued cell phone which had a Seattle number; and (4) every single phone call made during a four-month period from August to November of 2007 showed that Seattle was the location and origin of the call.

Mr. Johnson proceeded to schedule an investigative interview between Plaintiff and Boeing's Corporate Investigations division in Anaheim, California. After several difficulties in setting a date – including several representations by Plaintiff to Mr. Johnson that although she lived in San Diego – Seattle was her preferred location, Plaintiff eventually met with Investigator Dave Wuerch in Seattle on January 22, 2008. The Southern California Corporate Investigations division of Boeing also participated via telephone.

During the meeting, Plaintiff continued to represent to Boeing that she lived in California, but she could not produce a California address. Plaintiff also denied all allegations that she had engaged in the activities in the Seattle-area that Boeing's investigation revealed. However, when confronted with the evidence that Boeing discovered, Plaintiff made no further denials. Plaintiff also provided vague and evasive responses with respect to Boeing's contention that she lied about the amount of hours she worked. Specifically, when Mr.

Wuerch informed Plaintiff that Boeing's network indicated she had only worked an average of two hours per day, Plaintiff responded that she worked mostly on the weekends. Boeing subsequently performed a search in their remote access logs and determined that between May 2007 and January 2008, Plaintiff had accessed Boeing's network on only seven weekend days.

The meeting also revealed that Plaintiff had made misrepresentations to Boeing about a previous investigation Boeing conducted over Plaintiff's residence on April 9, 2007. When Boeing's investigators arrived in San Diego for an interview, Plaintiff called via cell phone and informed the investigators that she was in Kentucky. However, Plaintiff's cell phone records revealed that the call was made from Seattle. (*Id.*, Ex. B, pp. 23-40). It appears that Plaintiff was upset, evasive, and angry throughout the entire meeting. (Dkt. #32, Decl. of Johnson, Ex. B).

Significantly, Boeing notes that in order for Plaintiff to gain access in the Seattle Corporate Investigations office for the meeting, Plaintiff had to show a form of identification. Plaintiff presented a Washington State Driver's License with her Magnolia address to obtain a temporary badge. Boeing also indicates that Plaintiff arrived at the meeting in a car bearing a Washington license plate number that was registered to Plaintiff's Magnolia address.

Based on these events, Boeing sent Plaintiff a letter of termination on February 27, 2008. Richard Bodle, a Boeing Human Resources Consultant, informed Plaintiff that the termination was made "as a result of the discovery of gross misconduct on your part, including dishonesty and falsification of Company records." (Dkt. #31, Decl. of Bodle, Ex. 3). Mr. Bodle set forth the rules that Plaintiff was found in violation of, including falsification of records and misuse of company time, "with the aggravating factor of repetitive, extended or excessive incidences, and measurable impact to work performance." (*Id.*).

The letter also highlighted that Plaintiff had received a prior warning for inappropriate conduct on April 2, 2007, wherein Mr. Bodle indicated to Plaintiff that "you were warned that failure to conduct yourself appropriately would result in additional corrective action, which may include termination of employment." (*Id.*). The "inappropriate conduct" was an incident

ORDER
PAGE - 4

involving Plaintiff and her supervisor, Elliot Heifetz, when Plaintiff made the threatening remark, "What else do I need to do, put a gun upside his head?" on two occasions. (Decl. of Johnson, ¶ 4).

Notably, Plaintiff filed six different administrative complaints against Boeing from March of 2007 through August of 2008. Plaintiff filed two internal complaints with Boeing's EEO department, three complaints with the Equal Employment Opportunity Commission ("EEOC"), and a complaint with the Washington State Human Rights Commission ("WSHRC"). All six complaints were dismissed.

After receiving her right to sue letters from the EEOC on May 21, 2008, Plaintiff filed the instant action in King County Superior Court on August 18, 2008. Plaintiff brings claims under the Washington Law Against Discrimination ("WLAD"), RCW 49.60, and Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff does not specify the exact claim she is pursuing under either the WLAD or Title VII. Instead, the entirety of Plaintiff's allegations provides that:

> I filed a charge of discrimination with the [EEOC]. I also filed complaints with [Boeing's] Internal Human Resources Dept. I also spoke with the Senior Director of HR and Director of Internal EEO in reference to my problem. I rec'd no help. Instead I was suspended, terminated and retaliated against. The Company used false charges which I deny.

(Pl.'s Compl., ¶¶ 3.3 – 3.4).

Boeing properly removed the case to this Court on September 4, 2008. Boeing subsequently brought the instant motion for summary judgment on April 23, 2009. In a two-page response, Plaintiff indicates that summary judgment is premature, and that she is still awaiting further discovery from Boeing. Since Boeing filed its motion for summary judgment, Plaintiff has also filed several additional motions, including various motions related to discovery, a motion to seal the instant case, and a motion to appoint counsel.

**B. Request for Counsel**

As an initial matter, the Court addresses Plaintiff's request to appoint counsel in this case. In civil cases, a *pro se* litigant's right to counsel "is a privilege and not a right." *United States ex. Rel. Gardner v. Madden*, 352 F.2d 792, 793 (9th Cir. 1965) (citation omitted).

"Appointment of counsel should be allowed only in exceptional cases." *Id.* (citing *Weller v. Dickson*, 314 F.2d 598 (9th Cir. 1963)). A court must consider together "both the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983). Even where the claim is not frivolous, counsel is often unwarranted where the litigant's chances of success are extremely slim. *See Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985).

In the case at bar, it is evident that Plaintiff is not entitled to appointment of counsel as no exceptional circumstances exist. Plaintiff's claims are meritless as set forth in further detail below. In addition, the record establishes that Plaintiff has failed to cooperate in Boeing's discovery requests, and she has failed to provide the Court or Boeing with any tangible evidence to establish that she has any reasonable basis for this lawsuit. Tellingly, Plaintiff also leaves the section of her application for counsel regarding the merits of her claim completely blank. (Dkt. #33 at 3). She ignores the fact that the six administrative complaints filed internally with Boeing, the EEOC, and the WSHRC have all been dismissed. Plaintiff simply provides no reason or argument to the Court explaining why these findings were potentially made in error.

In any event, Title VII does not provide an automatic right to counsel for employment discrimination claims. *See* 42 U.S.C. § 2000e-5(f)(1). This was made expressly clear to Plaintiff by this district court's application for court-appointed counsel filled out by Plaintiff herself. The application requires a plaintiff to acknowledge that his or her lawsuit is not an employment discrimination brought under Title VII. (*See* Dkt. #33 at 1). Here, although the exact nature of Plaintiff's Title VII claim is unclear, there is no doubt that she is bringing claims under Title VII. Under such circumstances, a court-appointed counsel is not justified.

**C. Standard of Review**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. v. Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). Mere disagreement, or the bald assertion that a genuine issue of material fact exists, is insufficient to preclude summary judgment. *California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *Id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny*, 969 F.2d at 747). Conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995).

**D. Discrimination Under Title VII**

Title VII, as codified by 42 U.S.C. § 2000e-2(a), provides:

It shall be unlawful employment practice for an employer - (1) to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ; or (2) to limit, segregate, or classify his employees or applicants from employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race [or] color[.]

*Id.*

As mentioned above, Plaintiff does not expressly identify her claims under Title VII. Nonetheless, and in the interests of justice, the Court construes Plaintiff's claims as broadly as

possible. Based on the contentions Plaintiff makes in her complaint that she was terminated and retaliated against, the Court interprets Plaintiff's allegations as claims under Title VII for wrongful termination and retaliation. Accordingly, the Court discusses each claim below.

1. Wrongful Termination

In order for Plaintiff's Title VII claim for wrongful termination to survive summary judgment, she must first establish a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case is established when a plaintiff shows that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated individuals not in her protected class were treated more favorably. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). If a plaintiff succeeds in establishing these elements, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for terminating a plaintiff's employment. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, the plaintiff must then show that the defendant's reason is pretext for unlawful discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, Plaintiff simply cannot establish a prima facie case of discrimination. Notwithstanding the first three factors set forth in *Aragon*, Plaintiff did not prove that similarly situated individuals were treated more favorably than her. The Ninth Circuit has explained that to make this showing, an individual must show that her termination "occurred under circumstances giving rise to an inference of discrimination." *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990). A plaintiff "can establish this inference by showing the employer had a continuing need for [her] skills and services in that [her] various duties were still being performed, or by showing that others not in [her] protected class were treated more favorably." *Aragon*, 292 F.3d at 660 (internal quotations and citations omitted). Plaintiff provides no such inference of discrimination. There is no evidence to suggest that

Boeing engaged in any type of racial discrimination. In fact, without the labels "WLAD" or "Title VII" contained within Plaintiff's complaint, the Court is hard pressed to infer that this case involves any claim of racial discrimination.

In any event, it is unequivocally clear to the Court that Boeing possessed legitimate and nondiscriminatory reasons for terminating Plaintiff's employment. Repeatedly lying about one's residence is certainly grounds for termination, especially given the fact that Plaintiff was granted the opportunity to work a "virtual" assignment based on her representations to Boeing that she was living in California. Moreover, Plaintiff continued to make material misrepresentations to Boeing once she was confronted with evidence to the contrary.

In addition, falsifying time records is another legitimate ground for termination. As established above, Plaintiff grossly overstated the amount of hours she worked in light of Boeing's investigation into Plaintiff's daily log-in time to her company-issued computer. And when confronted with this evidence, Plaintiff represented to Boeing that she worked primarily on weekends, a contention that also proved to be false.

Coupled with the fact that Plaintiff was warned about her conduct with respect to the remarks made to her supervisor, it is clear to the Court that Plaintiff fails to establish a claim for wrongful termination under Title VII. An employer has a legitimate interest in ensuring that its employees do not make material misrepresentations. Employers also have a legitimate interest in retaining efficient employees. The evidence clearly establishes that Plaintiff did not fulfill either purpose.

Furthermore, Plaintiff does not submit any evidence to suggest that Boeing's reasons were unworthy of credence. In fact, the only claim Plaintiff makes to rebut these reasons is her contention that Boeing fabricated the workplace threat against her supervisor. (Dkt. #36 at 1). This naked and conclusory statement is insufficient to survive summary judgment. Once a party meets its burden in the *McDonnell Douglas* burden-shifting framework, the other party "must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial." *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d

1168, 1170 (9th Cir. 1997). Plaintiff has ultimately failed to meet her burden, and her wrongful termination claim is therefore dismissed.

 2. Retaliation

To make a prima facie case of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in a protected activity; (2) the defendant subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003) (citations omitted). Similar to the burden shifting framework established by *McDonnell Douglas* for wrongful termination claims, if the plaintiff is successful in establishing a prima facie case, the burden shifts to the employer to advance legitimate, nondiscriminatory reasons for any adverse actions taken against the plaintiff. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464-65 (9th Cir. 1994). The plaintiff has the ultimate burden of proving the defendant's proffered reasons are pretextual. *Id.* at 1465.

Here, and for the same reasons described above, Boeing had legitimate and nondiscriminatory reasons for terminating Plaintiff's employment. Plaintiff fails to offer any evidence to suggest otherwise. As a result, Plaintiff's retaliation claims under Title VII are likewise dismissed.

**E. Discrimination Under the WLAD**

The WLAD "prohibits an employer from discharging or barring any person from employment based on race." *Oliver v. Pacific Northwest Bell Telephone Co., Inc.*, 106 Wash.2d 675, 678 (1986) (citing RCW 46.60). The WLAD follows the same principles as Title VII. *See Xieng v. Peoples Nat. Bank of Washington*, 120 Wash.2d 512, 518 (1993). Specifically, "RCW 49.60 is patterned after Title [VII] . . . [c]onsequently, decisions interpreting the federal act are persuasive authority for the construction of RCW 49.60." *Oliver*, 106 Wash.2d at 678.

Therefore the analysis of whether Plaintiff has a cognizable claim under the WLAD is similar to whether she has a claim under Title VII. Because the Court has already concluded

that Plaintiff's Title VII claims for wrongful termination and retaliation fail, Plaintiff's WLAD claims also fail for the same reasons articulated above.

### F. Plaintiff's Request to Continue to Conduct Discovery

Lastly, the Court finds it worthwhile to address Plaintiff's contention that summary judgment is premature, and that the parties should continue to conduct discovery. FRCP 56(f), the governing rule on motions to continue summary judgment, provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Ninth Circuit has explained that in order to justify a continuance, "parties opposing summary judgment must make (a) a timely application which (b) sufficiently identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n. v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). A motion to continue summary judgment will not be granted if "the moving party has not diligently pursued discovery of evidence." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 n. 4 (5th Cir. 1992). The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment. *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996).

Here, Plaintiff fails to identify what material discovery or evidence she needs to establish that she has a cognizable claim under either the WLAD or Title VII. Plaintiff merely suggests that she is unaware of any Project Manager that "types 8 or 10 hours a day." (Dkt. #36 at 1). She further claims that several other project managers lived in other locations outside of Washington. However, these contentions ignore the substance behind Boeing's reasons for terminating Plaintiff's employment. It was neither her failure to "type" for a certain period of time nor the fact that other project managers were allowed to live elsewhere

that led Boeing to make the personnel decision it did. Rather, it was Plaintiff's material misrepresentations that she made on a consistent basis that led to her termination.

Ultimately, Plaintiff fails to specify what evidence she needs, or what discovery she must engage in to refute Boeing's motion for summary judgment. Under such circumstances, a stay of Boeing's motion is unwarranted, and the Court finds no basis for Plaintiff's claims.

### III. CONCLUSION

Having reviewed the relevant pleadings, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #26) is GRANTED. Plaintiff's claims are dismissed with prejudice and this case is now CLOSED. All other motions shall be STRICKEN AS MOOT.

(2) The Clerk is directed to forward a copy of this Order to all counsel of record and to *pro se* Plaintiff at the following address: PO Box 99025, Seattle, WA 98139.

DATED this 5th day of June, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE